UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRYON BURTON NEVIUS,              )
                                 )
          Plaintiff,             )
                                 )
     v.                          )          No. 4:25 CV 1891 RWS
                                 )
JP MORGAN CHASE BANK,            )
N.A., et al.,                    )
                                 )
          Defendants.            )

## MEMORANDUM AND ORDER

This matter is before me on *pro se* Plaintiff Bryon Burton Nevius's Motion

for Expedited Discovery [41], the "Chase Defendants'"[1] Second Motion to

Dismiss [47], and the "Millsap Defendants"[2] Motion to Dismiss and for Joinder in

the Chase Defendant's Motion to Dismiss [54]. On February 25, 2026, Nevius

filed his Second Amended Complaint alleging violations of the Fair Debt

Collection Practices Act (Counts I, II, V, VI, & VIIII), the Missouri Merchandising

Practices Act (Count VII), and the RICO Act (Count X). His complaint also brings

claims under Missouri common law for "Abuse of Process" (Count III), "Slander

of Title" (Count IV), and "Vicarious Liability and Negligent Supervision" (Count

---

[1] Defendants Bryan Cave Leighton Paisner, LLP, Jennifer A. Donnelli, William John Easley, JP Morgan Chase Bank, N.A., Michelle M. Masoner, and Elizabeth Spewak are collectively referred to as the "Chase Defendants."
[2] Defendants Cynthia M. Kern-Melone, Eva Marie Kozeny, Millsap & Singer, LLC, and Scott D. Mosier are collectively referred to as the "Millsap Defendants."

VIII).  In his Motion for Expedited Discovery, Nevius requests expedited discovery of "post-judgment accounting documents" and "non-privileged documents sufficient to show whether Chase authorized any person or entity to pursue collection or bankruptcy-related activity in Chase's name."  ECF. No. 42 at 2-3.  Defendants oppose Nevius's motion.  For the reasons set forth below, the Defendants' motions to dismiss will be granted, and Nevius's claims will be dismissed with prejudice.  Nevius's Motion for Expedited Discovery will therefore be denied.

### Background

This case arises out of a 2017 foreclosure action ("Foreclosure Action") brought by Defendant JP Morgan Chase Bank, N.A. ("Chase") against Nevius for unpaid debt on his mortgaged property.[3]  *See* ECF. No. 48 at 1-2; 48-1 at 3.  The allegations in Nevius's Second Amended Complaint are taken as true for the purposes of both motions to dismiss.

In August 2007, Nevius obtained a loan from Chase in the principal amount of $331,900.00 to finance the construction of his residence on property located in Jamestown, Missouri.  ECF. No. 39 ¶ 19; ECF. No. 48-1.  Nevius executed a promissory note and deed of trust, which named Chase as the payee on the note and the beneficiary / grantee on the deed.  ECF. No. 48-1 at 2.  Nevius defaulted on

---

[3] Case styled *JPMorgan Chase Bank, N.A. v. Nevius, et al.*, 2:17-CV-04205-BCW.

the loan and failed to abide by the terms and conditions of the note, deed of trust, and other related loan documents. *Id.* at 2-3. In July 2010, Chase notified Nevius of his default on the loan and that he was in breach of various loan documents. *Id.* Nevius was also notified that the loan was referred to foreclosure. *Id.* Throughout his complaint, Nevius makes numerous allegations about the Chase and Millsap Defendants engaging in unfair debt collection practices. Nevius alleges that he requested the original note be sent back to him and it was never produced. ECF. No. 39 at ¶ 21-37. He further alleges that the Chase Defendants "falsely represented" that they were in possession of the original note when they were not. *Id.* He alleges that Chase was not authorized to enforce the note because Chase sold the note after the closing, and he claims that the note and deed of trust Chase produced in previous lawsuits are invalid because his signature was forged. *Id.* at ¶ 14-15.

On October 25, 2017, Chase brought the Foreclosure Action against Nevius in the United States District Court Western District of Missouri for (1) judicial foreclosure; (2) recovery for breach of the note; (3) unjust enrichment; and (4) declaratory judgment. ECF. No. 48 at 2. Nevius brought counterclaims against Chase in the Foreclosure Action under the FDCPA and the Real Estate Settlement Procedures Act ("RESPA"). *Id.* The district court dismissed Nevius's

3

counterclaim under the FDCPA and granted summary judgment in favor of Chase on Nevius's RESPA counterclaim.  *Id.*

Chase received a favorable judgment on all of its claims against Nevius in the Foreclosure Action.  *See* ECF. No. 48-3, 48-4.  On December 10, 2020, the court entered a "Final Judgment for Foreclosure and Other Relief," naming Chase as the senior lienholder on the property.  ECF. No. 48-2.  In its final judgment, the court provided a legal description of the property. *Id.* at 2.  Nevius alleges the court's description of the property improperly included a "20 foot roadway."  *Id.*; ECF. No. 39 at 8, 11.  He claims that Defendant Bryan Cave "mischaracterized" this parcel as an "omitted easement" and therefore it should not have been subject to foreclosure.  *Id.*  Nevius appealed the court's final judgment, which the Eighth Circuit dismissed as untimely.  ECF. No. 48 at 3.  Nevius filed several post-judgment motions in the Western District of Missouri requesting the return of "all original documents mailed to set-off the debt" and that the court order Chase to discharge the debt.  Nevius then submitted an "Arbitration Award," attempting to claim that the debt was already discharged.  The court denied Nevius's motions as "improper and frivolous" and determined that Nevius had abused the judicial process by misrepresenting that he had sent a valid money order to Chase and that Chase had discharged his debt.  ECF. No. 48-5 at 5.  As a result, the court ordered

that it would return unfiled any further pleadings by Nevius in the case unless the pleading was a notice of appeal or he first obtained leave of court. *Id.*

On September 9, 2022, as part of a series of challenges against the district court's final judgment in the Foreclosure Action, Nevius filed a complaint in the Eastern District of Missouri against Defendants Chase, Masoner, Donnelli, Millsap & Singer, LLC, and Mosier. ECF. No. 48 at 3; 48-5. The Chase Defendants refer to this action as "Nevius I" for the purposes of their motion to dismiss.[4] Nevius's RESPA claim was dismissed with prejudice on res judicata grounds. ECF. No. 48-5 at 10. The court declined to exercise supplemental jurisdiction over Nevius's state law claims. *Id.* at 13.[5] Nevius appealed, and the Eighth Circuit affirmed the dismissal on January 30, 2024. ECF. No. 48 at 4.

In his current complaint, Nevius makes several claims about alleged misconduct that occurred during the Foreclosure Action. He alleges that Defendants Donnelli and Masoner made material misrepresentations throughout the Foreclosure Action, and because they filed documents using "the Court's ECF system," their "false representations" and "concealment…constituted predicate wire and mail fraud." ECF. No. 39 at ¶ 51-58. The Millsap Defendants

---

[4] Case styled *Nevius v. JP Morgan Chase Bank, N.A., et al.*, 4:22-CV-00953-AGF.

[5] In addition to his RESPA claim, Nevius's state law claims against the defendants in Nevius I were for: (1) violation of the MMPA; (2) abuse of process; (3) breach of contract; (4) breach of fiduciary duty; (5) constructive fraud; (6) negligence; (7) slander of title; (8) intentional infliction of emotional distress; (9) duress; (10) fraudulent misrepresentation; (11) fraudulent concealment; (12) fraud; and (13) conspiracy. ECF. No. 48-5 at 6.

5

represented Chase in its enforcement of the final judgment in the Foreclosure Action against Nevius.  ECF. No. 48-5 at 6.  Nevius brings several allegations against the Millsap Defendants under the FDCPA related to their efforts to collect post-judgment interest on behalf of Chase.  Nevius further alleges that the Millsap Defendants were not authorized to file a Proof of Claim on behalf of Chase in Nevius's most recent bankruptcy action.[6]  He alleges that the Proof of Claim was deceptive and falsified because it included "a large amount labeled as post-judgment interest."  ECF. No. 39 at 57, 43; ECF. No. 56 at 3-5.  In his most recent bankruptcy action, Nevius identified Chase as the sole creditor and filed his schedules, listing Schedule F, JP Morgan Chase Bank, N.A. in the amount of "$718,724.0" [*sic*].  ECF. No. 56 at 3.

The Chase and Millsap Defendants argue that Nevius's claims are barred by res judicata, collateral estoppel, and the statute of limitations, and with respect to any remaining claims, Nevius fails to state a claim upon which relief can be granted.  Nevius has filed responses in opposition to both motions.

**Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint.  In ruling on such a motion, I must accept all factual

---

[6] Case styled *In re: Bryon Burton Nevius*, 25-43832.  Nevius filed a Chapter 13 Voluntary Petition in the United States Bankruptcy Court for the Eastern District of Missouri on October 3, 2025. ECF. No. 56 at 3.  This case has been dismissed.  ECF. No. 56 at 2.

allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't. of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). But I may not "presume the truth of legal conclusions couched as factual allegations." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although I also must generally ignore materials outside the pleadings, I may consider "materials that are necessarily embraced by the pleadings and exhibits attached to the complaint." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A threadbare recital of the elements of a cause of action, supported merely by conclusory allegations, is not sufficient. *Iqbal*, 556 U.S. at 678.

Pro se complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). However, pro se pleadings must still allege facts which, if true,

state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). A "complaint should be found to raise a claim only 'if the essence of an allegation is discernable, even though it is not pleaded with legal nicety.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The Court must weigh all factual allegations in favor of the plaintiff, unless the facts alleged are clearly baseless. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).

## Discussion

After thorough review of the record, I find that Nevius's FDCPA and MMPA claims are barred by res judicata and collateral estoppel. Nevius's complaint contains 297 allegations. The claims and issues he raises in this lawsuit have already been litigated and decided on the merits in prior judicial proceedings. Nevius cannot utilize this lawsuit to collaterally attack final judgments on the merits just because he disagrees with the outcome of those cases. To the extent Nevius alleges he identified "new injuries" underlying his RICO and state common law claims, I find those claims are barred by the statute of limitations and he fails to state a claim upon which relief can be granted.

In determining whether res judicata and collateral estoppel preclude Nevius's claims, I may consider court documents from related judicial proceedings that are on the public record. "Our interpretation of the phrase face of the

complaint…include[s] public records and materials embraced by the complaint." *C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 763-64 (8th Cir. 2012) (internal quotation omitted).  "The district court may take judicial notice of public records and may thus consider them on a motion to dismiss."  *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (noting that public records attached to the pleadings and referenced by the appellants' complaint were "properly…considered by the district court in ruling on a motion to dismiss").  Nevius challenges the Chase and Millsap Defendants' conduct in prior judicial proceedings in his complaint.  The Chase Defendants have attached court filings that are on the public record from these cases as exhibits to their motion.  *See* ECF. No. 48 at 2, 48-1-48-5.  I therefore take judicial notice of filings in the Foreclosure Action and Nevius's other related lawsuits and bankruptcy actions for the purpose of ruling on the instant motions.

## I.    Res Judicata and Collateral Estoppel Preclude Nevius's FDCPA Claims (Counts I, II, V, VI, & VIIII).

Res judicata and collateral estoppel preclude Nevius's FDCPA claims.  Res judicata, or claim preclusion, applies when "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Yankton Sioux Tribe v. U.S. Dep't of Health & Hum. Servs.*, 533 F.3d 634, 639 (8th Cir. 2008) (citing *Allen v. McCurry*, 449

9

U.S. 90, 94 (1980)).  "To establish that a claim is barred by res judicata a party must show: (1) the first suit resulted in a final judgment on the merits; (2) the first suit was based on proper jurisdiction; (3) both suits involve the same parties (or those in privity with them); and (4) both suits are based upon the same claims or causes of action."  *Id.* (internal quotation omitted).  Regarding the fourth element, the Eighth Circuit has held that " 'whether a second lawsuit is precluded turns on whether its claims arise out of the same nucleus of operative facts as the prior claim.' "  *Magee v. Hamline Univ.*, 775 F.3d 1057, 1059 (8th Cir. 2015) (quoting *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir.1998)).

First, the Foreclosure Action and Nevius I resulted in final judgments on the merits.  The court in the Foreclosure Action dismissed Nevius's counterclaim under the FDCPA for failure to state a claim.  *See, e.g.*, *Clark v. Callahan*, 587 F. App'x 1000, 1002 (8th Cir. 2014) ("It is well-established that the dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a 'judgment on the merits.'") (internal quotation omitted).  The court also granted summary judgment in favor of Chase on all four of its claims and on Nevius's RESPA counterclaim and entered the final judgment of foreclosure.  *See, e.g.*, *Anderson v. City of St. Paul, Minnesota*, 849 F.3d 773, 779 (8th Cir. 2017) ("It is well established that summary judgment is a final judgment on the merits for purposes of res judicata.").  Although the court in Nevius I declined to exercise

10

supplemental jurisdiction over Nevius's state law claims, it dismissed his RESPA claim *with prejudice* on res judicata grounds.

Second, there is no dispute that the district courts in the Foreclosure Action and Nevius I had jurisdiction. Jurisdiction in the Foreclosure Action was based on diversity pursuant to 28 U.S.C. § 1332. ECF. No. 48 at 7 (citing the Foreclosure Action ECF No. 1 at ¶¶ 1-11, 70). In Nevius I, the court had federal question jurisdiction over Nevius's federal claims pursuant to 28 U.S.C. § 1331. *Id.* (citing Nevius I ECF. No. 1).

Third, this case involves the same parties and their privities. Nevius's addition of several attorneys and Bryan Cave does not circumvent the res judicata bar. *See Elbert v. Carter*, 903 F.3d 779, 782 (8th Cir. 2018) (" '[P]rivity' is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata."); *see also Talley v. U.S. Dep't of Lab.*, No. 19-00493-CV-W-ODS, 2020 WL 3966312, at *12 (W.D. Mo. July 13, 2020) (noting that "several courts have determined an attorney and client are privies" for res judicata purposes) (collecting cases) (cleaned up); *Harmon Indus., Inc. v. Browner*, 191 F.3d 894, 903 (8th Cir. 1999) ("Privity exists when two parties to two separate suits have a close relationship bordering on near identity.") (internal quotation omitted). Nevius named Chase, Masoner, Donnelli, Millsap & Singer, LLC, and Mosier as

defendants in Nevius I.  The law firms and their attorneys who represented Chase in the Foreclosure Action and Chase's attempts to enforce the final judgment are in privity with Chase for res judicata purposes.  *See* ECF. No. 48-5 at 10 ("Nevius I") (finding "Nevius and Chase, and the other named Defendants in this action are all Chase's attorneys and are therefore in privity with Chase.").  Nevius attempts to argue that because he never "received verification" that the named law firms and attorneys were authorized to act on behalf of Chase, they cannot be in privity.  He cites no law to support this claim, and the bankruptcy court has already rejected it. *See In re: Bryon Burton Nevius*, Case No. 25-43843-659, ECF. No. 58 (denying Nevius's Petition to Compel Proof of Standing and Attorney Authorization "as to all attorneys representing JP Morgan Chase Bank N.A., which are Millsap & Singer, LLC and Bryan Cave Leighton Paisner, LLP.").

Fourth, Nevius's FDCPA claims are the same claims or causes of action he raised in the Foreclosure Action and Nevius I.  Nevius's claims under the FDCPA are based on his allegations that Chase and Chase's attorneys were acting as "debt collectors" within the meaning of the statute.  *See* ECF. No. 39 at 33-46, 55-65.  In his counterclaims in the Foreclosure Action, Nevius alleged that Chase, as a debt collector, violated the FDCPA by "misstating the amount or legal status of any debt" and by "using deceptive mans in an attempt to collect a debt which was not owed to it."  ECF. No. 48-1 at 3.  He also asserted a counterclaim against Chase

12

under the Real Estate Settlement Procedures Act (RESPA) for allegedly failing to respond to "several requests from [Nevius] for information concerning the loan." *Id.* The district court in the Foreclosure Action dismissed Nevius's counterclaim under the FDCPA for failure to allege that Chase was a debt collector within the meaning of the statute. ECF. No. 48-1 at 5. Specifically, the court found that "even construing Nevius's allegations liberally, and drawing all the reasonable inferences from them in the light most favorable to Nevius, his FDCPA counterclaim fails to allege that Chase was a debt collector." *Id.* The court noted that creditors and mortgage servicing companies are excluded from the definition of "debt collector" under the statute. ECF. No. 48-1 at 5 ("[A] debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." (quoting *Victorian v. Wells Fargo Home Mortg.*, No. 4:15-CV-00667-AGF, 2015 WL 8663993, at *4 (E.D. Mo. Dec. 14, 2015)).

Nevius cannot now re-fashion his previously litigated and decided RESPA claim as a separate FDCPA claim in this lawsuit. In Nevius I, Nevius alleged that the Defendants violated RESPA by "failing to return his tender of payment and failing to discharge or set-off his debt in exchange for the payment." ECF. No. 48-5 at 10-11. The court found that "Nevius litigated this issue in the Foreclosure Action and did not appeal the Western District's ruling, based on its review of the

13

purported money order, that Nevius did not submit a valid money order to Chase."

*Id.* The court went on to hold that res judicata barred Nevius's claim and collateral estoppel (issue preclusion) would also bar "any claim regarding Chase's alleged failure to respond to Nevius's tender, as Nevius fully and fairly litigated that issue before the Western District." *Id.* at 11 n.4. Nevius again alleges that Chase "stopped accepting [his] mortgage payments and returned payments [he] attempted to tender, which [he] alleges was intended to force or maintain a default and facilitate foreclosure." ECF. No. 39 at 8. He makes several repetitive allegations about his attempts to tender payment to Chase. These allegations are barred by res judicata and collateral estoppel. *See Ideker v. PPG Indus.*, Inc., 788 F.3d 849, 853 (8th Cir. 2015) (noting that collateral estoppel applies when "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in a prior suit") (quoting *James v. Paul*, 49 S.W.3d 678, 682 (Mo.2001) (en banc)).

Additionally, Nevius cannot re-litigate the issue of whether the 20-foot roadway parcel ("Roadway Easement") is part of the subject property. The court in the Foreclosure Action held that "[u]nder the uncontroverted facts…the Court concludes Chase is entitled to summary judgment on the issue of quiet title to include the Roadway Easement…and the Deed of Trust is thus properly reformed." ECF. No. 48-4 at 14. Nevius's allegations about Defendants "mischaracterizing"

14

the parcel as an omitted easement are therefore barred by collateral estoppel. Nevius also attempts to re-litigate the issue of whether the Millsap Defendants had "authority" to file a Proof of Claim in Nevius's most recent bankruptcy action. Nevius had a full and fair opportunity to litigate this issue in the bankruptcy action. He filed a 70-page objection to the Proof of Claim based on the Millsap Defendants alleged lack of authority to represent Chase.  The bankruptcy court considered and denied Nevius's objections.  *See In re: Bryon Burton Nevius*, Case No. 25-43843-659, ECF. No. 73.  Nevius also cannot reassert his claims under the FDCPA related to the alleged sale of his loan to "Freddie Mac."  The court in the Foreclosure Action found that "Nevius's assertions that Chase sold the Note to Freddie Mac are not supported by any admissible evidence."  ECF. No. 48-3 at 7. Nevius will not receive any more bites at the apple on these issues.

Even if Nevius's FDCPA claims were not barred by res judicata or collateral estoppel, he fails to state a claim that the attorneys and law firms acting on behalf of Chase qualify as "third-party debt collectors" under the statute. Under the FDCPA, a "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  Nevius does not offer any factual allegations demonstrating

15

that collecting debt owed to another is the "principal purpose" of Defendant

Millsap & Singer, LLC or Defendant Bryan Cave, LLP, both of which are sizeable

law firms with multiple areas of practice. *See, e.g.*, *Volden v. Innovative Fin. Sys.,*

*Inc.*, 440 F.3d 947, 952 (8th Cir. 2006) (finding defendant was a debt collector

because defendant's "principal business-*some eighty percent*-is processing

dishonored checks") (emphasis added).  Nor has Nevius sufficiently pled that any

of the Defendants are "regularly engaged" in debt collection activities.  *See, e.g.*,

*SEAN DUBECK, Plaintiff, v. MARION LAW OFFICES, & WILLIAM H. MARION,*

*Defendants.*, No. 8:20-CV-149, 2021 WL 4355580, at *4 (D. Neb. Sept. 24, 2021)

(finding persuasive Sixth Circuit's decision which held "that to find that a law firm

or lawyer is a debt collector, 'a plaintiff must show that the attorney or law

firm…collects debts as a substantial, but not principal, part of his or its general law

practice'") (quoting *Schroyer v. Frankel*, 197 F.3d 1170, 1176 (6th Cir. 1999)).

Moreover, even if Chase's attorneys were "third parties" attempting to

collect Nevius's debt on behalf of Chase, this practice is expressly permitted by the

statute. *See Qurashi v. Ocwen Loan Servicing, LLC*, 760 F. App'x 66, 68 (2d Cir.

2019) ("The FDCPA excludes from this definition of debt collector "any person

collecting or attempting to collect any debt owed ... *or due another* to the extent

such activity ... concerns a debt *which was not in default at the time it was obtained*

*by such person*.") (citing § 1692a(6)(F)) (emphasis added).  Nevius has failed to

16

plausibly allege that Chase or any "third-party debt collectors" acquired his debt *after* it was in default.  The parties do not dispute that Chase was the original lender of Nevius's 2007 loan.  *Pinson v. JP Morgan Chase Bank, Nat. Ass'n*, 646 F. App'x 812, 815 (11th Cir. 2016) (finding that "because Chase [as mortgagee] was the lender, Pinson's argument that Chase was a debt collector for purposes of the FDCPA fails. Section 1692a(6)(F) *exempts original creditors*, such as Chase, from its definition of debt collector. 15 U.S.C. § 1692a(6)(F))").  Nevius therefore fails to plead an essential element of his FDCPA claims.  *See, e.g.*, *Klein v. Stewart Zlimen & Jungers, Ltd.*, No. CV 18-658, 2019 WL 79317, at *3 (D. Minn. Jan. 2, 2019) ("The second element [for proving a prima facie case of  violation of the FDCPA] incorporates the requirement that the collector in question is a debt collector.").

Nevius also fails to state a claim that Chase and the Millsap Defendants violated the FDCPA by including post-judgment interest in their Proof of Claim filing in the bankruptcy action.  Simply put, filing a valid proof of claim in a bankruptcy action is not a violation of the FDCPA.  *Midland Funding, LLC v. Johnson*, 581 U.S. 224, 230 (2017) (finding under the FDCPA "nothing misleading or deceptive in the filing of a proof of claim that, in effect, follows the [Bankruptcy] Code's system for determining whether a claim will be allowed") (cleaned up).  As the Millsap Defendants note, the Federal Rules of Bankruptcy

17

Procedure require creditors to *include all amounts owed* on the claim in their proof of claim.  ECF. No. 56 at 5 (citing Rule 3001).  This includes post-judgment interest *that accrued before Nevius filed his petition.  In re Edwards*, 446 B.R. 276, 281 (B.A.P. 8th Cir. 2011), aff'd, 477 F. App'x 405 (8th Cir. 2012) ("The bankruptcy court allowed the post-judgment interest that accrued prior to the filing of the Edwardses' chapter 13 petition. We agree with the bankruptcy court's conclusion.").

Here, Nevius is clearly attempting to re-litigate matters that have already been decided on the merits, and he fails to plausibly allege that the Chase and Millsap Defendants are debt collectors as defined by the FDCPA and that they violated the FDCPA in his most recent bankruptcy action.  Nevius cannot once again sue the Defendants under the FDCPA *based merely on the assumption* that they are "debt collectors" or by re-labeling them as "third-party debt collectors."

## II.    Res Judicata and Collateral Estoppel Preclude Nevius's MMPA Claim (Count VII) and his RICO Claim (Count X) is time-barred.

Res judicata and collateral estoppel preclude Nevius's MMPA claim.  Nevius alleges that Defendants Chase, Millsap & Singer, LLC, Scott D. Mosier, and Cynthia M. Kern-Melone violated the MMPA by "engag[ing] in deception, misrepresentation, and unfair practices in connection with collection and enforcement activity, including representing that foreclosure/execution could

18

proceed under valid authority." ECF. No. 39 at 68. Though the district court in Nevius I declined to exercise jurisdiction over Nevius's MMPA claim, Nevius cannot attack the Defendants' authority to foreclose on the subject property and simply label it as a claim under the MMPA. *Twombly*, 550 U.S. at 555 (holding that a plaintiff must plead "more than labels and conclusions and a formulaic recitation of the elements of a cause of action"). In determining whether Nevius provided sufficient factual allegations to state a claim, I do not accept as true his "legal conclusions couched as factual allegations." *Id.* As already discussed, the validity of the Foreclosure Action and the named Defendants' authority to enforce the judgment has been litigated and determined on the merits. See ECF. No. 48-4 at 14 ("The Foreclosure Action") (finding that "Nevius's various recorded 'affidavits,' 'revocations,' 'certificates,' and 'notices' do not undermine *Chase's right to the Property based on Nevius's default*") (emphasis added).

Furthermore, Nevius fails to state a claim under the MMPA. To state a claim under the MMPA, a plaintiff must show that he "(1) purchased merchandise from [defendant]; (2) for personal, family or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful under the [MMPA]." *Tucker v. General Motors LLC*, 58 F.4th 392, 397 (8th Cir. 2023). In 2020, the MMPA was amended "to place more stringent requirements on plaintiffs raising MMPA claims." *Abbott v. Golden Grain Co.*, 677 F. Supp. 3d

19

940, 946 (E.D. Mo. 2023). The 2020 amendment added three elements to the claim, including "that the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages." *Id.* at 947. Nevius offers no factual allegations demonstrating that the Defendants' allegedly unlawful practices *caused* him to take out the loan in 2007. Nevius also fails to allege that he suffered an ascertainable loss of money or property. The Defendants have been unable to foreclose on his property, and there is no evidence he made any valid payments towards his debt. Nor has he alleged that the Defendants' engaged in misconduct *during the initial loan transaction that caused* his alleged loss. *See Williams v. HSBC Bank USA, N.A.*, 467 S.W.3d 836, 843 (Mo. Ct. App. 2015) (finding no ascertainable loss under the MMPA where defendant's "alleged violations did not cause the loss…foreclosure occurred because Appellants had not paid their mortgage in several months").

Regarding Nevius's RICO Act claims, his allegations that Chase's attorneys were engaging in misconduct to collect the debt for themselves, including alleged discovery violations, forgery, and fraudulent misrepresentations, should have been raised in either the Foreclosure Action or shortly thereafter. "The statute of limitations for a civil RICO Act claim is four years." *Geivett v. AMC Mgmt., LLC*, 158 F.4th 900, 903 (8th Cir. 2025). Nevius's allegations about the Chase Defendants engaging in mail and wire fraud go back as far as 2016. Indeed, the

Eighth Circuit has held that there is a "separate accrual rule" in which new RICO claims "accrue each time the plaintiff suffers an independent injury on account of the defendant's wrongful conduct." *Id.* at 904.  Despite his argument that he incurred new injuries in 2024 and 2025, Nevius fails to properly invoke the "separate accrual rule."  "Injuries that are of the same type, flow from the same source, and are part of one cognizable pattern of conduct do not trigger a new limitations period." *Id.*  Nevius has not identified any "independent injuries" in that are separate from or "do not flow" from the Foreclosure Action.  Nevius's RICO claims are time-barred.

Nevius alleges that he did not have a full and fair opportunity to litigate his claims because of filing restrictions imposed by the court in the Foreclosure Action.  However, as the Chase Defendants point out, Nevius had the opportunity to file *hundreds* of documents and pleadings in the Foreclosure Action before the restrictions were imposed, and Nevius continued to file numerous post-judgment motions after the court entered its final judgment of foreclosure.  ECF. No. 61 at 3.  Nevius's MMPA claim is barred by res judicata and collateral estoppel, and he fails to state a claim under the statute.  His RICO claim is barred by the four-year statute of limitations.

21

### III.    Nevius Fails to State a Claim Under Missouri Law for Abuse of Process (Count III), Slander of Title (Count IV), and Vicarious Liability and Negligent Supervision (Count VIII).

In the interest of judicial economy, I will exercise supplemental jurisdiction over Nevius's state law claims.  "[A] federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise.  A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (citing 28 U.S.C. § 1367(a), (c)).

Nevius fails to plausibly allege the essential elements for abuse of process under Missouri law.  To state such a claim, a plaintiff must plausibly allege "(1) the present defendant made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process; (2) the defendant had an improper purpose in exercising such illegal, perverted or improper use of process; and (3) damage resulted." *Ritterbusch v. Holt*, 789 S.W.2d 491, 493 (Mo. 1990).  "The essence of a claim for abuse of process is the use of process for some collateral purpose." *Impey v. Hart*, 471 S.W.3d 776, 780 (Mo. Ct. App. 2015).  Nevius alleges that the Millsap Defendants "threatened" him with a U.S. Marshal Sale and attempted to foreclose on the property with an "expired" writ of execution.  ECF. No. 39 at 61-62.  Nevius does not provide any factual allegations demonstrating

22

that the Millsap Defendants obtained writs of execution or sent a notice of a U.S. Marshal Sale for a collateral purpose or to "compel [him] to do some collateral thing which he or she could not be compelled to do legally."  *YAM Cap. III, LLC v. GS Hosp., LLC*, 648 S.W.3d 878, 886 (Mo. Ct. App. 2022).  The Millsap Defendants were pursuing a valid and enforceable final judgment of foreclosure to its authorized conclusion.  *See id.* (noting that an abuse of process claim will lie only in "rare cases" and "no liability attaches where a party has done nothing more than pursue the lawsuit to its authorized conclusion").  Nevius's complaint fails to state a claim for abuse of process under Missouri law.

Nevius fails to plead any of the essential elements for slander of title under Missouri law.  "To support an action for slander of title, there must be false words that are maliciously published, causing the plaintiff to suffer a pecuniary loss or injury."  *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 864 (Mo. Ct. App. 2010).  Nevius does not plausibly allege that the published notice of the U.S. Marshal Sale contained false or misleading information and that he suffered a pecuniary loss or injury as a result.  Pecuniary harm "must flow from the publication of the false statement."  *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 869 (8th Cir. 2025).  Examples include: "accumulating extra interest due to a belief that the loan still exists; losing out on a sale because of a credit check showed a continuing lien on [the property]; and incurring attorney

fees to clear the title."  *Id.* at 869-70 (internal citations omitted).  Nevius's vague references to damage to his "credit" do not suffice to demonstrate pecuniary harm was *caused by a false statement that was maliciously published* as opposed to harm caused by his mortgage debt itself.

Nevius fails to state a claim for vicarious liability and negligent supervision because he does not plausibly allege that Defendants Mosier and Kern-Melone owed him a legal duty and that they were acting outside the scope of their employment.  "In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury."  *Holterman v. Copeland*, 700 S.W.3d 333, 337 (Mo. Ct. App. 2024) (citation omitted).  "A legal duty owed by one party to another may arise from at least three sources: (1) it may be prescribed by the legislature; (2) it may arise because the common law imposes a duty based on the relationship between the parties, or because under a particular set of circumstances a party must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or conduct."  *Scales v. Whitaker*, 615 S.W.3d 425, 431 (Mo. Ct. App. 2020).  Nevius's complaint is devoid of any allegations demonstrating that Mosier and Kern-Melone owed him a legal duty.  Nevius also fails to allege any legal duty owed via Chase.  *Dunnigan v. Federal Home Loan Mortgage Corporation*, 184 F.Supp.3d 726, 739

24

(D.Minn., 2016) ("With no fiduciary relationship (i.e., special relationship) between lenders and borrowers, courts routinely dismiss negligence and negligent misrepresentation claims brought by borrowers against lenders.").

Moreover, "[u]nder Missouri law, it is beyond doubt that 'a negligent supervision claim requires as a necessary and indispensable element that the employee be acting outside of the scope of her employment.'" *Hejnal v. U.S. Xpress, Inc.*, No. 4:17-CV-2557 CAS, 2018 WL 534376, at *4 (E.D. Mo. Jan. 24, 2018) (quoting *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 402 (Mo. Ct. App. 2015)).  Nowhere in his complaint does Nevius allege that Mosier and Kern-Melone were acting outside the scope of their employment in representing Chase in enforcing the judgment in the Foreclosure Action.  Nevius's complaint contains a mere "recital of the elements" of negligence and vicarious liability, and he provides no information beyond "conclusory allegations." *Iqbal*, 556 U.S. at 678.  This is not sufficient to survive a 12(b)(6) motion.  *Id.*  Nevius clearly fails to state a claim for vicarious liability and negligent supervision under Missouri law.

Here, Nevius fails to plead any of the essential elements of his state law claims for abuse of process, slander of title, and vicarious liability and negligent supervision.  Nevius's state law claims are another attempt to challenge the underlying validity of the Foreclosure Action and the Defendants' attempts to enforce it.

## IV.    Conclusion

Finally, Nevius has prolonged litigation over this matter for several years and prevented the enforcement of a valid and final district court judgment for foreclosure on the subject property.  The Chase and Millsap Defendants have had to expend their time and resources in responding to Nevius's lengthy and repetitive allegations across multiple lawsuits and bankruptcy actions.  As a result of Nevius's conduct and to promote the just, speedy, and inexpensive resolution of this matter, **I will order that any further pleadings by Nevius shall be returned undocketed unless he files a Notice of Appeal or requests Leave of Court.**  *See* Fed. R. Civ. P. 1.  The district court in the Foreclosure Action found that Nevius was abusing the judicial process and imposed a similar filing restriction.  ECF. No. 48-5 at 4.

For the aforementioned reasons, I will grant the Chase Defendants' Second Motion to Dismiss and grant the Millsap Defendants' Motion to Dismiss and for Joinder in the Chase Defendant's Motion to Dismiss.  Nevius's Second Amended Complaint will be dismissed in its entirety with prejudice.  Because I am dismissing his claims with prejudice, I need not consider Nevius's Motion for Expedited Discovery.

Accordingly,

26

**IT IS HEREBY ORDERED that** the Chase Defendants' Second Motion to Dismiss Second Amended Complaint [47] is **GRANTED.**

**IT IS FURTHER ORDERED that** the Millsap Defendants' Motion to Dismiss and for Joinder in the Chase Defendants' Motion to Dismiss [54] is **GRANTED.**

**IT IS FURTHER ORDERED that** Plaintiff Bryon Burton Nevius's Second Amended Complaint [39] is **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED that** Plaintiff Bryon Burton Nevius's Motion for Expedited Discovery [41] is **DENIED with prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff Bryon Burton Nevius's Motion for Order Requiring Proof of Attorney Authority and Related Relief [70] is **DENIED with prejudice.**

**IT IS FURTHER ORDERED** that any further pleadings by Nevius in this matter **shall be returned undocketed** unless he files a Notice of Appeal or requests Leave of Court.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 14th day of May, 2026.

27